Dear State Senator, Williams.
¶ 0 This office has received your letter requesting an official Attorney General Opinion addressing, in effect, the following questions:
Does the authority delegated to the State Textbook Committeein the Oklahoma Constitution and the Oklahoma Statutes allow theCommittee to require, as a condition for the adoption of thetextbooks for Oklahoma public schools, that a statement orpronouncement specified by the Committee be added to or placed intextbooks?
 Did the agenda for the State Textbook Committee meeting onNovember 5, 1999, provide as a matter of law sufficient notice tothe public under the Oklahoma Open Meeting Act to allow theCommittee to consider requiring a disclaimer to be added to orplaced in textbooks?
 I. Authority of the Oklahoma State Textbook Committee
¶ 1 The Oklahoma Constitution provides the framework for the textbook system for common schools in Oklahoma:
¶ 2 The Legislature shall provide for a system of textbooks for the common schools of the State, and the State through appropriate legislation shall furnish such textbooks free of cost for use by all pupils therein. The Legislature shall authorize the Governor to appoint a committee composed of active educators of the State, whose duty it shall be to prepare official multiple textbook lists from which textbooks for use in such schools shall be selected by committees composed of active educators in the local school districts in a manner to be designated by the Legislature.
Okla. Const. art. XIII, § 6.
¶ 3 The Constitution requires certain basics — a committee appointed by the Governor, composed of active educators of the State, which prepares a textbook list from which local textbook committees choose textbooks for their schools, all in a manner to be provided by the Legislature. The provision of a textbook system within those parameters is delegated to the Legislature.
¶ 4 As mandated by Oklahoma's Constitution, the Legislature has provided for a system of textbooks in 70 O.S. 1991 and Supp.1999, §§ 16-101 through 16-124. The State Textbook Committee's qualifications are set out in pertinent part as follows:
¶ 5 There is hereby created the State Textbook Committee, which shall be composed of two members from each congressional district, appointed by the Governor with the advice and consent of the Senate and one member, appointed by the Governor with the advice and consent of the Senate, who shall be a lay citizen not having a teaching certificate and having at least one child in the public schools of Oklahoma. A majority of the twelve members appointed from the congressional districts shall be classroom teachers. . . . Each member appointed from a congressional district shall have had not less than five (5) years' teaching or supervisory experience in the public schools of Oklahoma at the time of appointment, and shall be actively employed in the public schools of Oklahoma during the term of service on said Committee.
70 O.S. Supp. 1999, § 16-101[70-16-101].
¶ 6 The State Textbook Committee (the "Committee") is to select textbooks for subjects taught in the public schools up to and including the twelfth grade, the selections to be for not more than six years for every textbook. See 70 O.S. Supp. 1999, §16-102[70-16-102](A). Before making the selections, the Committee must advertise for sealed bids from publishers. Each bid, in addition to specifically stating the price at which each book will be furnished, must be accompanied by a sample copy of each book offered in the bid. See 70 O.S. Supp. 1999, § 16-103[70-16-103].
¶ 7 In the first two weeks of October each year the Committee must hold a public hearing on all books being considered for adoption. See 70 O.S. Supp. 1999, § 16-102.1[70-16-102.1]. The Committee shall give consideration to the testimony received at the public hearings and any legislative resolution as to textbook content, and shall select textbooks after careful consideration of all the books presented. See 70 O.S. Supp. 1999, § 16-104[70-16-104]. "[T]he books selected for adoption shall be those which, in the opinion of the Committee, are best suited for the public schools in this state." Id. The Committee has the right to reject any and all bids. See 70 O.S. 1991, § 16-109[70-16-109].
¶ 8 The Committee is allowed to adopt a book on a provisional basis under certain circumstances.
¶ 9 If the State Textbook Committee determines that significant inaccuracies exist in the contents of a textbook which has been bid or that information contained in the textbook is not current, the Committee may adopt the book on a provisional basis. Final adoption of the textbook and use of textbook money shall be contingent upon the publisher providing a modified or revised textbook which is acceptable by the State Textbook Committee.
70 O.S. Supp. 1999, § 16-104[70-16-104].
¶ 10 The particular statement which gave rise to your questions is set forth below in the discussion of your second question. The statement, while hinting at disagreement with some of the scientific information in the textbooks, does not purport to correct significant inaccuracies or outdated information, and therefore does not fall within this statutory provision.
¶ 11 Once the Committee has selected textbooks for adoption, it must notify those publishers to whom contracts are to be awarded.See 70 O.S. Supp. 1999, § 16-104[70-16-104]. All contracts with publishers are then to be signed by the chair and secretary of the Committee[1]
 See 70 O.S. Supp. 1999, § 16-106[70-16-106].
¶ 12 Your first question asks essentially whether the above constitutional and statutory provisions give the Committee the authority to require the publishers of textbooks to add to or place in those textbooks a statement specified by the Committee. To answer that question, we must look at the nature of the authority of state agencies.
¶ 13 In reaching its decision in the case of Lingo-LeeperLumber Co. v. Carter, 17 P.2d 365, 368 (Okla. 1932), the Oklahoma Supreme Court cited the following premise: "Public officers have and can exercise only such powers as are conferred on them by law. . . ." A variation of this rule was set forth in a later case when the Court stated, "It is a generally accepted rule, and we think a wholesome one, that Boards created by statute may only exercise the powers granted by statute."Boydston v. State, 277 P.2d 138, 142 (Okla. 1954).
¶ 14 Subsequently, the Court has recognized that:
 [G]enerally, an officer or agency has, by implication and in addition to the powers expressly given by statute, such powers as are necessary for the due and efficient exercise of the powers expressly granted, or such as may be fairly implied from the statute granting the express powers. However, an agency created by statute may only exercise the powers granted by statute and cannot expand those powers by its own authority.
Marley v. Cannon, 618 P.2d 401, 405 (Okla. 1980) (citations omitted).
¶ 15 Public officers or agencies, then, have only such power as is expressly given by law, is necessary in order to exercise the power given by law, or may be fairly implied from the law giving the express power.
¶ 16 In the case of the Committee and the question you have raised, neither the Oklahoma Constitution nor the applicable statutes provide express authority for the Committee to require an addition of its own making to the textbooks it reviews or adopts. The most the Committee can do outside of rejecting a bid is conditionally adopt a book which contains significant inaccuracies or outdated information, delaying final adoption until the publisher makes the necessary corrections. See 70O.S. Supp. 1999, § 16-104[70-16-104].
¶ 17 The next inquiry is whether authority to make such additions is 1) necessary in order to execute the Committee's express powers or 2) may be fairly implied from the statutes or constitution which grant the express powers. "In determining what authority may be implied from a statutory scheme, the statute as a whole is considered; and the legislative intent must be determined." City of Hugo v. State ex rel. Public EmployeesRelations Bd., 886 P.2d 485, 492 (Okla. 1994).
¶ 18 The constitutional mandate to the Legislature is to set up a system of free textbooks for the schools of the State. It requires the objectivity of a Committee of active educators which prepares a list from which local committees are to choose the textbooks for their schools. The statutory scheme provides for review by professional educators and parents, input by the public, and a system of sealed bids from publishers. It contains strict penalties for bribery. The system provides for a reasoned and controlled process for selecting textbooks. It also provides financial controls for the sizable expenditure of public funds involved in purchasing textbooks for all the schools of the State. Looking at the Constitution and statutes as a whole, the purpose is to provide a system of selection and purchase of textbooks.
¶ 19 The Committee's constitutional duty is to prepare multiple textbook lists. Okla. Const. art. XIII, § 6. The statutory system requires solicitation of bids, review of bids and books, selection or rejection of books, and execution of a contract for books selected. It cannot be said that it is necessary to the execution of any of these duties to add to the books statements or pronouncements formulated by the Committee. Neither can one infer that the review and selection process implies that power.
¶ 20 Since authority for the Committee to require the addition to or placement of a statement in textbooks as a condition of adoption is not granted by Constitution or statute, is not necessary to the exercise of powers expressly granted, and cannot be fairly implied from the provisions granting the express powers, the Committee does not have such authority.
 II. Agenda Requirements Under the Open Meeting Act
¶ 21 Your second question asks that this office apply the law to a specific factual situation. You ask about a particular agenda used by the Committee for its November 5, 1999, meeting and whether it is sufficient under the Open Meeting Act as a matter of law to permit the Committee to lawfully consider requiring a disclaimer to be placed in certain textbooks. The items on that agenda are set forth as follows:
1. Roll Call
2. Approval of minutes
3. Discuss voting procedures
 4. Vote to approve student materials bid for 2000-2001 State Textbook List, but materials to be held for concerns, will not be discussed until after approval of all other bids
 5. Discussion then vote for materials held for concerns
 6. Discuss and vote on 2000-2001 Committee "DRAFT" Calendar
7. Information to the committee
8. Adjourn
¶ 22 The agenda also reflects the date, time and place of the meeting. The disclaimer which was ultimately required reads as follows:
A Message from the State Textbook Committee
 This textbook discusses evolution, a controversial theory which some scientists present as scientific explanation for the origin of living things, such as plants and humans.
 No one was present when life first appeared on earth. Therefore, any statement about life's origins should be considered as theory, not fact.
 The word evolution may refer to many types of change. Evolution describes changes that occur within a species. (White moths, for example may evolve into gray moths.) This process is micro evolution, which can be observed and described as fact. Evolution may also refer to the change of one living thing to another, such as reptiles into birds. This process, called macro evolution, has never been observed and should be considered a theory. Evolution also refers to the unproven belief that random, undirected forces produced a world of living things.
 There are many unanswered questions about the origin of life which are not mentioned in your textbook, including: Why did the major groups of animals suddenly appear in the fossil record, known as the Cambrian Explosion? Why have no new major groups of living things appeared in the fossil record in a long time? Why do major groups of plants and animals have no transitional forms in the fossil record? How did you and all living things come to possess such a complete and complex set of instructions for building a living body? Study hard and keep an open mind. Someday you may contribute to the theories of how living things appeared on earth[2]
¶ 23 The meetings of the Committee are governed by Oklahoma's Open Meeting Act, (the "Act"), 25 O.S. 1991 and Supp. 1999, §§301-314. That Act requires that public bodies, at least twenty-four (24) hours prior to a meeting, display public notice of the meeting which sets forth the "date, time, place andagenda for said meeting." 25 O.S. Supp. 1999, § 311[25-311]((A)(9) (emphasis added). All agendas required by the Act to be posted "shall identify all items of business to be transacted" by the public body at the meeting. 25 O.S. Supp. 1999, § 311[25-311](B)(1).
¶ 24 It is the stated policy of the Act "to encourage and facilitate an informed citizenry's understanding of the governmental processes and governmental problems." 25 O.S. 1991,§ 302[25-302]. An agenda shall be "`worded in plain language, directly stating the purpose of the meeting . . . [and] the language used should be simple, direct and comprehensible to a person of ordinary education and intelligence.'" Andrews v. IndependentSch. Dist. No. 29 of Cleveland County, 737 P.2d 929, 931
(Okla. 1987) (quoting Haworth Bd. of Educ. of Indep. Sch. Dist.I-6, McCurtain County v. Havens, 637 P.2d 902, 904
(Okla.Ct.App. 1981)).
¶ 25 The question then is whether the agenda set out above gives sufficient notice to the public under the Open Meeting Act to permit the Committee to lawfully vote on or even consider a disclaimer for textbooks.
¶ 26 Of the items on the agenda, numbers 1, 2, 3, 6 and 8 are routine and self-explanatory. They cover what might be referred to as "housekeeping" items — roll call, minutes, voting procedures, setting of calendar and adjournment. Item 4 tells the public the Committee will vote on materials for the State Textbook List. Thus a vote to accept or reject textbooks would fit under this item. Item 4 makes reference to "materials held for concerns" to be discussed after approval of all other bids. The public is told that the Committee will address separately those materials about which it has concerns. Item 5 provides for "discussion then vote" on the materials held for concerns. Even though the public is not told the nature of the concerns, it is given notice that not all materials may be approved, and that the Committee will be discussing its concerns during the meeting. Given there are hundreds of textbooks to consider and public hearings on the textbooks have been held, these items are sufficient to allow the Committee members who had concerns after reviewing the books to present those concerns to the Committee for discussion and vote. Item 7, "information to the committee," is too vague to inform the public of the nature of any business to be transacted under that item and is therefore insufficient.
¶ 27 There is no item on the agenda which would inform the public that a disclaimer regarding evolution or any other topic was to be considered, much less voted on. The agenda does not give the public notice that such a significant step might be taken. Without such information, the public is deprived of its right to be present and to know when decisions affecting the public are being made. See Haworth, 637 P.2d at 904.
¶ 28 The Act says that "[a]ny action taken in willful violation of this act shall be invalid." 25 O.S. 1991, § 313[25-313][3]
"Wilfullness [sic] does not require a showing of bad faith, malice, or wantonness, but rather, encompasses conscious, purposeful violations of the law or blatant or deliberate disregard of the law by those who know, or should know the requirements of the Act. Notice of meetings of public bodies which are [sic] deceptively vague and likely to mislead constitute a wilful [sic] violation." Rogers v. Excise Bd. ofGreer County, 701 P.2d 754, 761 (Okla. 1984). "Willful" is defined "to include any act or omission which has the effect of actually deceiving or misleading the public regarding the scope of matters to be taken up at the meeting. This also includes agency action which exceeds the scope of action defined by the notice." Haworth, 637 P.2d at 904.
¶ 29 Notice and agenda requirements are the "very heart" of the Act. In re Appeal of the Order Declaring Annexation Dated June28, 1978, 637 P.2d 1270, 1273 (Okla.Ct.App. 1981). Because the agenda for the Committee's meeting of November 5, 1999, gave no indication that a disclaimer or any other statement or pronouncement for textbooks would be considered by the Committee, the agenda had the effect of misleading the public as to matters to be taken up at the meeting. Thus, the vote of the Committee to require a disclaimer in certain textbooks was a willful violation of the Act, and the Committee's action is invalid.
 III. Conclusion
¶ 30 The exercise of governmental power is a serious responsibility. It is established in law that a governmental body may not expand its powers by its own authority. It is also established in law that a governmental body must operate with such openness that the citizenry is informed of its activities. Any activities of a public officer or public body which do not fall within those parameters are void.
¶ 31 It is, therefore, the official Opinion of the AttorneyGeneral that:
 The Oklahoma State Textbook Committee lacks authority, eitherexpress, necessary, or fairly implied, under the OklahomaConstitution, article XIII, section 6, and the OklahomaStatutes, 70 O.S. 1991 and Supp. 1999, §§ 16-101 through16-124, to require that a statement or pronouncement specified bythe Committee be added to or placed in textbooks as a conditionfor their adoption for use in Oklahoma public schools.
 The agenda for the November 5, 1999, meeting of the OklahomaState Textbook Committee failed to provide as a matter of lawsufficient notice to the public as required under the OpenMeeting Act, 25 O.S. 1991 and Supp. 1999, §§ 301 through 314,to allow the Committee to lawfully consider or vote upon therequirement of a disclaimer to be added to or placed in textbooksby publishers. Any vote to require such a disclaimer under theNovember 5, 1999, agenda was a willful violation of the OpenMeeting Act and therefore invalid.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
GAY ABSTON TUDOR ASSISTANT ATTORNEY GENERAL CHIEF, GENERAL COUNSEL SECTION
[1] The State Superintendent of Public Instruction or a designated member of the staff shall serve as Secretary of the Committee and vote only when there is a tie vote in the membership of the Committee. See 70 O.S. Supp. 1999, §16-101[70-16-101].
[2] The text of the disclaimer was obtained from a transcript of the November 5, 1999, meeting. Due to some procedural confusion, it is not entirely clear which books are to contain the disclaimer and how it is to be added, i.e. by gluing in, printing in text, inserting by flyer, etc.
[3] The Act also provides for criminal penalties in 25 O.S.1991, § 314[25-314], making a willful violation a misdemeanor punishable by a fine not exceeding $500.00 or imprisonment in the county jail for a period not exceeding one year or by both fine and imprisonment.